May it please the Court, Counsel, my name is Andrew Parker, Parker Daniels Keyboard Law Firm, representing Christine Klimek, who is here in the courtroom with me today. Ms. Klimek worked for CentraCare for 13 years and she was ultimately fired for following her health care provider's recommendation not to take the COVID-19 vaccine because of a somewhat rare health condition that she suffered from and had suffered from for a number of years. This is an important case because it not only looks at the issue which I want to talk about of disability and what is a disability, and this Court has ruled recently on that subject and that the standard is not a demanding standard. Here, the evidence is overwhelming, but the Court could find that there was no genuine issue even though all the evidence sat on one side. Secondly, the District Court found that Ms. Klimek was not a qualified individual under the ADA and said there is no genuine dispute on that fact. We would argue the District Court was correct, there is no genuine dispute, but there is no genuine dispute that Ms. Klimek, in fact, is a qualified individual. Importantly in that regard, she worked 100% of her time in her job at CentraCare at the time remotely in Alexandria from her home. She never came into contact with any patients. She never came into contact with any other employees. Those facts, I do not believe, are disputed in this record and I do believe are dispositive. The third issue I want to discuss briefly, if I have time, is the interactive process and reasonable accommodation. Christine Klimek suffers from a condition known as CRPS, complex regional pain syndrome. It is a neurovascular disorder causing debilitating burning pain when activated and is exacerbated by what most would consider relatively minor bodily invasions, even bug bites. Of course, more serious injuries do activate it more seriously, but certainly even bug bites do, and a vaccine definitely does. In this case, her primary health care providers consistently, without exception, recommended that she not receive vaccinations. And in particular, as it relates to the COVID-19 vaccination that's at issue, her primary health provider at that time specifically said she should not get the vaccination. But CentraCare blindly pushed forward requiring her to get the vaccine or lose her job, and they did that based upon the CDC's guidance. This federal agency sitting in Washington determining whether or not Ms. Klimek should get the vaccine. That's a problem. CentraCare should not have applied CDC guidance that way, causing Ms. Klimek to lose her job. They should have listened to her primary health care providers and allowed her to continue in her fully remote job and continue her employment with CentraCare. Her job was basically a paperwork computer job, data entry job, an administrative role, full-time. That's what she did.  Counsel, let me ask you about the district court's opinion regarding the essential job functions of Ms. Klimek. Other than the district court's opinion, is there any precedent for recognizing an employer's social policies or policy goals as essential job functions? No, I know of none. I don't believe CentraCare has cited any, but, Your Honor, you have hit on a central point. The district court, knowing that this is a 100% remote job, knowing that there is no sensibility to trying to protect patients or staff from Ms. Klimek because she never interacts or interfaces with any of them, the district court had to twist and pivot to say, well, we have an obligation to protect the public. It becomes the district court's own social policy preferences regarding COVID-19, regarding vaccinations that dictate whether CentraCare could push forward. Is there any known or reasonably stated limiting principle in this social policy theory that the judge has apparently accepted based on its own understanding of public policy generally? It looks to me like this is more like I'm the Commissar General of the United States, and I've announced the social policy, and while it adopts the social policy that was enunciated by the CDC, it doesn't look like anything judges ordinarily write or say. I don't expect you to tell me where it comes from. I assume the other side will tell me that. I am curious about whether you see any limiting policy to how a judge, if we let district judges do this, what's the limit on any district judge's view of social policy? I see no limitation if this is allowed. To be honest, I've been practicing for almost 38 years. This summary judgment decision was very surprising to me. Particularly when you're dealing with such a hotly debated social policy issue, which of course we know occurred during the government's handling of a health pandemic. There's no question that it is serious, but when you have Ms. Klimek working 130 miles from here up in Alexandria in her home remotely, not coming into contact with any center care personnel or patients, it's alarming when this social policy preference is applied. Equally, and it's interesting, the blind adherence to the CDC guidance, even if you were going to do that, in fact in this case, the CDC identified two conditions that would be contraindicators and that would be exceptions to getting the vaccine. The policy in this case that was applied by center care and as in our appendix, the appellant's appendix, pages 25 and 26, talks about medical exemptions. It says a medical statement from your provider will be required, and it was provided by Ms. Klimek. In fact, more than one were provided. And then it says medical exemptions will be considered for people who have anaphylaxis, myocarditis, or Guillain-Barre. Guillain-Barre was not identified by the CDC. So even center care understands that additional medical conditions beyond what the CDC has said, so it wasn't just the CDC guidance. It's CDC guidance plus whatever else we want to look at. Importantly, the ADA, and by the way, like in the previous case to some extent, the ADA is a congressionally adopted act that is law in the United States. The CDC and that agency does not rewrite that law. Obviously, it can provide guidance, and it has, but let me read to you as well, and it's cited in our papers, the Center for Medicare Services, the CMS agency in Washington, quote, individuals who provide services 100% remotely, such as fully remote telehealth or payroll services, are not subject to the vaccination requirements of this interim final rule. So that's common sense, but the district court in this case ignored that. The ADA requires individualized and particularized review regarding individual specific jobs and job requirements and their specific medical condition. That did not happen here. It was a generalized population-wide CDC guidance assessment that was applied by the district court on to Ms. Klimek. Had there been individualized, particularized review, there should have been summary judgment in this case for Ms. Klimek, because there is no argument that center care has that would cause them to fire her when she is in a fully remote job and she submitted pages of healthcare provider recommendations that she not get the vaccine. This case should have been over with summary judgment for Ms. Klimek and a trial only on damages. I'd like to reserve the remainder of my time. Well, are you going to talk about the interactive process? I'm happy to do that, Your Honor. Well, is it that important? Well, I think it's covered well in our briefing. Well, if you want to just stand on your briefing, that's fine, let me just ask you this. Would you agree that for the failure to accommodate claim to survive summary judgment, the employee must do more than present the prima facie case, but also show that there's been a failure to engage in the interactive process in good faith? Yes, I would agree that is absolutely required. Well, that's fine if you want to just put... I think I want to touch, I will touch on it in addition, in light of the fact of the court's interest. There was no good faith interactive process. I refer the court to our opening brief at page 48, but the cases Canny, Cravens, and Jelstad all relate to what is meant by a good faith interactive process. Here, both at our appendix, pages 62, 63, as well as the interrogatory number 15, which is in the appendix at page 67, it indicates that there was no consideration or analysis to determine whether a different conclusion would be reached. In fact, all that was said to Ms. Klimek was, I want to spend some time with you to convince you to get the vaccine. It wasn't looking at other accommodations. Of course, if it were, it would have been easy to determine that, and Ms. Klimek identified many, and they were all summarily rejected. In fact, when it was asked, we can meet with your healthcare providers and explain to them why you should get the vaccine, that was not a comment to say, to talk to them about the interactive process. Their mind had been made up. Thank you, your honors. Thank you. May it please the court, counsel, my name is Sarah Gullickson-McGrane, and I'm here on behalf of CentraCare. The parties agree on one thing, they think it's an easy case for them, we think it's an easy case for us. It's really important we think back to what was happening in September of 2021. In 2026, it's often easy to forget. In September 7th, 2021, CentraCare's hospitals had 51 COVID-19 patients, 19 of them were in the ICU, nine were on ventilators, and in the entire state of Minnesota, we had seven ICU beds available. The week ending September 11th, the death total peaked at 73,466, and in 2021, there were 460,000 deaths from COVID-19. Counsel, it's my understanding that Ms. Klemek contracted a severe case of COVID-19 about nine months before the mandatory vaccination policy was implemented. Was there any consideration given to the fact that she may have been just as immune as those who were vaccinated? No, Your Honor. The CentraCare system considered the guidance that was issued by more than 50 healthcare organizations across the country. So it wasn't just the CDC that they were looking at, it was also what the healthcare industry was asking, which is we need to make sure that we are not making our patients sicker by introducing to them, to people who could have the disease. And in September of 2021, there was no evidence to suggest that a certain level of immunity had been reached after one case of COVID. Now we know a lot more than we did then. But again, we're going back to September of 2021. But we're dealing here with the Americans with Disabilities Act.  And how this court applies that act. And I'd like to look at the essential job functions here. Is it permissible for an employee, an employer, to define an essential job function in such a way that there's not possible for an accommodation because it's precluded by definition? I disagree. In other words, if the essential job function is you must comply with the policy, it seems to preclude an accommodation by definition. I disagree, Your Honor. So here the requirement was as a condition of employment, you must be vaccinated. And if you were vaccinated or have a medical or religious exemption. And if she had had either a medical or a religious exemption, she could have then gone through the accommodations process to talk about the fact that she was working from home. But under the law, isn't the test whether the accommodation is reasonable, not whether it complies with a policy created by the employer? That's the second part of the test. The first part of the test looks at what is the business justification for the policy, for the essential functions or the conditions of employment?  Doesn't we have to look at the specific job duties and do a specific analysis based on what did this person do? And this person was remote. Partially true, Your Honor. This person was remote at the time, but the evidence in the record shows that Ms. Klimek did go on site for orientation at the beginning of her job. And the evidence also shows that because there were significant staffing shortages, she could have been called in to do direct patient care. And again, we look not only at what the 50 hospitals across the country said, at what the CDC... So the reasonableness of an accommodation depends upon speculative events that she could have been called in? No, Your Honor. It's not speculative when she'd already been in, she already went in to do orientation. But once you've completed... Go ahead. Once you've completed orientation, you've completed it. It's not like you're going to be in again for orientation, right? You could go in for staff meetings, and I'd ask... Yeah, but during COVID, wasn't everything done by teleconference anyhow when it just came to just staff meetings? Or did you just bring your people together for the sport of bringing them together and spread disease? No. So again, Your Honor, she did go in in person for orientation. Right. So there were certain times where she was going in in person. Certainly, there would be other occasions and especially staffing shortages. Ms. Klimek testified in her deposition that in September of 2021, COVID patients were coming in like crazy. It was the height of the pandemic and the numbers were so high, there were not enough central care workers, beds available, or staff to care for patients. That's her testimony as to what was happening in. That concedes that there are staffing shortages and people who are remote, as the physicians testified, would be called in. We didn't get to that point because we didn't get to that point with Ms. Klimek because she stepped out of the process. Employers may establish conditions of employment. A condition of employment may be that you have a license to practice medicine, that you have a license to be a nurse. Here, a condition of employment for all employees and not just employees. It also applied to contractors. It applied to leadership. It applied to their board of directors, was that everybody either have the vaccine or get a medical or religious exemption. That is what an employer is tasked with doing during the worldwide pandemic when we have seven ICU beds open in the state. That is precisely what hospitals should be doing because the number one rule is to do no harm to patients. It is wrong to suggest that simply because she was remote, she was entitled to a pass to a policy that applied to all employees. Council talked about the CMS rule and I'd encourage the court to read the CMS rule. It came after September of 2021. It came in November. But there, the CMS rule talks about wanting all employees to be vaccinated. And if we look at page 61571, it talks about remote workers or even people like a quote-unquote one-time elevator operator or delivery driver need not be subject to the vaccination requirements. But we strongly encourage facilities when the opportunity exists and resources allow to facilitate the vaccination of all individuals who provide services infrequently and are not otherwise subject to the requirements of this rule. So not only do we have the CDC, not only do we have the healthcare organizations, but we also have CMS saying we want all people vaccinated because that is what's going to protect our healthcare system in this time of dire need. And we go to the question of whether or not she was even a disabled person. And again, if we look at the time in question, which was September of 2021, she had not treated for her CRPS or her RSD in many, many years. She admitted she hadn't seen Dr. Elgor, who is the specialist in it, since 2010. She wasn't receiving active treatment as a diagnosis that she had in the past. And your honors, I'd say it's very, very similar to the HoostVet case, which was a case, Judge Gross, you authored and a case that I was involved with. The facts are almost identical, except COVID-19 presents far greater risks in a worldwide pandemic that we had never seen before. We also have the authority now of seven different courts who've ruled on this issue. And I'm going to take that back, six courts. I'm counting HoostVet because I think it's so similar. We have the Fourth Circuit that's already ruled in favor, consistent with the district court opinion. And we have five district court opinions. One came out since the time of our briefing. All have been consistent that employers have to make these hard decisions. And again, Ms. Klimek was a great employee. Nobody wanted to lose her. That is undisputed. She was a wonderful employee. But when a hospital says all employees have to be vaccinated unless you get an exemption, it's the employee's job to go through the exemption process. And she did not have one of the contraindications. And again, nothing at the time this process was going on, the CDC, CMS, or the over 50 major healthcare organizations that looked at it, suggested that RSD should be exempt. It seems like you're arguing that an employer can adopt policies that somehow trump the Americans with Disabilities Act in terms of reasonable accommodations, simply by how they define their essential job duties. No, Your Honor, I'm not. The ADA is something that would have been triggered if she had met the condition of employment by either getting the exemption or getting the vaccine. And then we would have engaged in the interactive process with her to determine whether remote work was going to keep her safe, and whether it was going to keep employees safe. That's the same test that all of the courts have employed that have considered this issue. We look at what is the condition of employment, which is you have to get the vaccine or an exemption, and then we go through the accommodations process, which is the process that's outlined in the policy, and it's also consistent with the CDC and CMS. All of them are consistent that that is the process that is to be followed. What was the proof that was actually submitted to your client showing that the medical condition was contraindicated for the vaccine? There was no information that was submitted that showed it was contraindicated. What was submitted is her diagnosis of CRPS or RSD. That is not a contraindication. Are we talking about a letter from a doctor? She had three things. First, she submitted her own. First, she submitted an email saying she had a permanent exemption and that should apply. And we said, no, this is a different policy. This is a different application process. Now you go through the COVID process. She then submitted an application where she filled out her portion and the provider portion, and there she said she was exempt to live or attenuated vaccines. She then, the next day, got her nurse practitioner, Ms. Cherhart, to issue a statement that said that she believed that she shouldn't get the vaccine because of her diagnosis. Nothing that showed that it was a contraindication as required. And again, what was contraindicated was in the policy. It was explained to all employees what was going to be accepted. And this type of evidence is the same type of evidence that has been considered by all six of the courts that have considered, in addition to this court, the COVID exemption cases. So being presented with those statements, it sounds like two statements from the appellant and one statement from her nurse practitioner. Was there an effort to go behind those to obtain medical, definitive medical records, test results? Absolutely. That kind of thing that maybe an independent medical source could review. Absolutely. After she was denied the exemption, and I should say, she submitted two different statements by Ms. Cherhart. The first was that patient has RSD as well as documentation that explains her reaction to all vaccines. That was a false statement. She had never had a vaccine since she had RSD. And Ms. Klimek admitted that in her deposition, that her physician or her nurse practitioner submitted a false statement. The second statement by Cherhart said that Klimek was under her care, that her condition was permanent and progressive, and she has followed up with specialties who provided documentation explaining the reactions,  Ms. Klimek also admitted that was a false statement because she hadn't followed up with specialties. In fact, she hadn't seen Dr. Elgort. Then we get to your owner's question. My apologies for the long way to get there. But as part of the process, after she was denied her request for medical exemption, she was given the opportunity to submit additional information and additional records showing why she thought she had this medical information that would suggest she shouldn't get it. She submitted a lengthy document and nowhere in there were any medical records. Her response when I asked her about that in her deposition, is she thought it was our job to prove that it was safe, not her job to prove that she was qualified for an exemption. And again, it is not the employer's responsibility. It is the employee's responsibility. And the other piece I'd like to go back to, who's that? Again, directly on point, not COVID, but more serious times now. Jacobs v. Mercy. Rodriguez v. WellSpan. McCarthy v. Massachusetts General. Harris v. City of Carbondale. Together Employees v. Massachusetts General. And a new case that was decided since our brief went in. I think it's HITT, H-I-T-T, can't read my own writing, versus M-H-M, Support Services. Every single case has said employer gets to decide the essential job functions. Vaccination may be an essential job function, especially in a healthcare situation. We are not talking about somebody who's working at a grocery store. We're talking about somebody who's in healthcare. And again, a nursing expert who could be called in to provide services. Every single one of those cases has said, you must do more than say, I have a disability. You have to link the disability to the accommodation requested, which was the language that was originally authored by Judge Gross in the HUSFEC case, and has now been cited more than 50 times in cases involving vaccines. Every single case in the country has held that employers get to make those hard decisions. It impacts good people, and it's unfortunate. But in the time of a worldwide pandemic, when we are trying to keep people alive, and we have seven ICU beds open in the state, we have to make those decisions. It's unfortunate, and it's hard. The other question that one of you asked, and I apologize, I don't remember which, is a part about the interactive process. She is the one who stopped the interactive process. There was an offer to have Dr. Morris speak with her healthcare professionals. Counsel, if the interactive process consists of an effort to convince her to get the vaccine, is that really an interactive process? Absolutely, Your Honor. And to an accommodation? Absolutely, Your Honor. And I'd send Your Honor to the Fourth Circuit case, which is the Tarquinio, if I'm pronouncing it correctly. Yes, Tarquinio v. Johns Hopkins. In that case, the plaintiff suffered from Lyme's disease, and the court held that the interactive process also gives the employer a chance to confirm that it has a duty to accommodate to begin with. The interactive process helps the employer make the threshold call. Employers need not take the employee's word for it that the employee has a disability that may require special accommodations. That's why the ADA implementing regulations specify that the goal of the interactive process is to identify the precise limitations resulting from the disability. So that process is designed so the employer can find out more information, and certainly her providers, if she had any that specialized in CRPS, which we don't think she did at the time, could provide that information as well. And I realize I'm over time, and I've talked very fast. Thank you. Thank you, counsel. All right, Mr. Parker, you have about a minute. Why don't you round up to two minutes for your rebuttal? We asked a few questions, took up some of your time. Thank you. Thank you, Your Honor. Yes, it was the height of the pandemic, and there weren't a lot of beds, etc. And during none of that time was Ms. Klimek called in. If she's ever going to be called in, it's going to be during that time. She was never called in. It is so speculative, it's rank speculation, that the district court relied on to claim that actually her job isn't 100% remote. It is 100% remote. Well, could you, for my benefit, if you would, move to this, the, I guess it's under, would be under this interactive process prong here. And what about, it looks to me like the record only shows the statement of the appellant, and also a statement of a nurse practitioner. And when there was a request for documentation, or even an opportunity to speak with her, physicians, that was, those were refused and denied. How does that fit in here? That is not the record. That's inaccurate. Okay. Statement of the record, not by the court, but by the appellees in the matter. That was my understanding from looking at the case, but I would stand to be corrected if you can. Sure. As it relates to this particular exemption, Ms. Klimek went to her primary health provider, and she got a statement which is at appendix 132. Who was that? Who was the primary health provider? Jennifer Cheerheart. Is that the nurse practitioner? Yes. She's a nurse practitioner, worked for 25 years for center care. And she was a longtime primary care provider for Ms. Klimek. She, at 132, wrote a statement, and it was submitted. At 135, she wrote, to whom it may concern, her condition is permanent and progressive. She is followed with specialties who provided documentation explaining reactions. Those were put into the center care system and reasoning why she is to be exempt from receiving vaccines. It is not recommended that she get any vaccines due to her RSD, and she should be exempt from receiving the COVID vaccine. Cheerheart also submitted, in the record of the summary judgment, a declaration articulating specifically what her findings were. But in addition to her, in 2016, the primary health provider submitted by Ms. Klimek at appendix 127 stated specifically that she should not receive vaccines. Now, this was pre-COVID. Obviously, we weren't talking about the COVID vaccine at that time. Note, 1035. Well, I think you've used up your time, and you've answered my question. Okay. Further questions? All right. I think we understand the case. Thank you for your argument.